versus New York Department of Education. Am I pronouncing that right? Mr. Glass? Yes, Your Honor. I am? Okay. Just give us one second to just get settled. So, Mr. Glass, you have reserved three minutes for rebuttal. Correct. That gives you seven minutes out of the gate. You may proceed. May it please the Court, my name is Brian Glass. I represent Plaintiff Thamvir Gehlaut, who is a teacher in the New York City public schools. This is the third case I'm aware of where district judges have been granting motions to dismiss on employment discrimination cases right off the bat, just from the pleadings alone. Well, it's allowed. I mean, your view is that it's presumptively not appropriate. Well, two of those cases have been reversed recently. One is recently this last week on March 31st where the courts are recognizing that the district judges are engaging in fact-finding on pleadings alone at a very early stage of putting an undue burden on a pro se petitioner plaintiff who is just trying to plead out of the box. And what in this case I think was particularly problematic, even worse than the Mitchell case, which was just reversed by a panel of this Court on March 31st, that was Dwayne Mitchell v. New York City Department of Education, here the judge didn't even allow Mr. Gehlaut to amend the complaint, allowed the city to put extrinsic documents like a 3028 decision, which was misread in the record and really misinterpreted because without having familiarity with the New York City public school system, I think inferences were drawn from that decision that aren't even correct. I noted in the city's brief that they suggested that there was a prior 3028 decision or prior 3028 charges in 2019, which isn't even factually correct. So the problem with doing these things at a very early level before discovery or any attempt to allow the plaintiff to clean up the allegations is you don't get to the decision maker. Discovery, if Mr. Gehlaut does not have a valid case, there's certainly opportunity for the city to and pleading facts that might support a discriminatory intent. So maybe that's worth focusing on the distinction between those two. It's generally hard to plead new facts that are going to change the time bar problem, right? It's not an issue of time bar. I believe there are some claims that are time barred, and we're not arguing that today. We're arguing about the discriminatory intent prong. And Vega has made it clear that discrimination is a mosaic, and you have to plead basically two things. One, comments from a decision maker that suggests discrimination, and we have that in this case with the anti-Indian comments that were made in 2019 from the decision maker who caused them to be reassigned. And replacement, you know, comparators. And certainly he was replaced after he was removed by a non-Indian individual. Is that enough in a pleading stage to get through to discovery? And Mitchell suggests it is, you know. Did he ask to amend? I believe he did. He did ask to amend, and the judge said it would be useless. But she made a lot of fact-finding based on extrinsic documents, which also is not generally the procedure at the motion-to-dismiss stage. So you have two stray remarks, and then is there a temporal nexus? I mean, they were pretty far apart, a year and two years. Well, not really, because if you look at how this played out, the stray remarks were in, I believe, in June 2019, and within a month, he was reassigned from the teaching duties for the first time by the same principal. So the allegations were in May 2019. Right, but, I mean, so you've got adverse actions, some of which are kind of time-barred, and others of which are not time-barred, but you seem to be lumping them all together. That seems to be one of the concerns of the district court, right? Well, but they can be used as background to show how there are timely acts clearly later in the narrative. But certainly in May 2019, there are comments that are anti-Indian. By the next month, he's reassigned from his teaching duties and put in a rubber room. When he tries to return, he's actually cleared from those charges initially, because the principal is told you have to take him back in March 2020. She solicits a new investigation, sends out an email to every student in the school, has Mr. Gulott ever done anything to you, and then uses that as a basis to reassign him again. Except that you have a hearing in which some of the charges are confirmed. Many of the charges are— Am I right about that? You are correct, but if you read that— So how is her activity in any way within the causal chain of the results of the 3028 hearing, which is the only way under New York law that he could be punished since he's a tenured teacher? Well, there are case laws that suggest that the motivation for the charges was a discriminatory motive. Even though they're confirmed? First of all— It's confirmed that he was sexually—that he was making sexually inappropriate comments to women, to students in his class? I don't think that was confirmed, Your Honor. If you read that decision closely, you have to read that decision. Most of those charges were thrown out. The salacious charges were thrown out of that case. What he was basically found guilty of was handshaking students as they walked in the door. Yes, this is why the danger of attaching documents that are misread and not understanding the context creates great problems in this, because the judge is being prejudiced by reading something that they don't really have a full context of what happened here. If you read that decision, most of those charges are dismissed. He got a three-month suspension. I agree. If he did salacious comments, yes, he should be fired. This was not that case. That's why we have due process in New York for these teachers, because they are— The principle comes from the 3028 here. That's absolutely misread. That's not how it works in New York City. The principle is the one who motivates charges. The principle makes the allegations through a legal unit called the 3028 unit. I understand that. And they are the decision-makers in the process. If their motivation is infected by their animus towards a teacher, they have every ability to get legal to bring a case by— Who decides the penalty? There is a panel of arbitrators that are appointed. That's what I just said, and you said I was wrong about that. Well, no, but— I am right about that, aren't I? You are correct. The penalty was imposed by someone else other than the principle. But there's also a lot of cases in the New York court. For example, Severin is— Just answer my question. I'm sorry. Isn't that the case, that the penalty was imposed by someone other than the principle? It was an appointed arbitrator by the parties. And there was no appeal. There was no attempt to overturn the 3028 result. Is that correct? He did not appeal that. That's correct. Now, as to the state claims, was there a notice of claim filed consistent with 3813 of the education laws required by the education law? There was not, but there's also a lot of cases that it's not— So was Judge Donnelly inappropriate in dismissing the state claims because of the failure to adhere to 3813? The only claim I think she got wrong was the principle does not require a notice of claim against the principle. So to the extent that we're claiming that the principle herself is the decision maker, that does not require a notice of claim. It's also not required in federal claims. But I would agree with you that the law seems to be— So you're willing to concede that she was partially right, huh? I'm not even saying all the cases should survive. I'm saying that the discrimination cases should survive, and I believe— Well, you opened with this tendency in the district courts now to take away plaintiff's opportunities, and I was just exploring the extent of what that tendency was. Yes, I am not arguing every claim that she got everything wrong. I'm not saying that. I'm saying that there are certain claims, especially on the discrimination claims, if you look at the Mitchell case, if you look at James Morrow's case, they're engaging in a little too much fact-finding at this stage. And it may be that you're right, that at a later stage this doesn't survive and the facts come out. It might be there. But when we don't get to the decision-maker, we can't really tell, and we can't get all the facts because all we have is certain information. Like, we're not going to know exactly who replaced him or—you know, so we need discovery for that. And what we're asking for is an opportunity to flesh out our case and then, you know, have the discovery, and at that point it can be revisited. And I can tell you from experience that if these cases get passed and the motion is dismissed, most of them will settle because when the decision-maker gets on the stand, you'll start to see that, you know, it's not all on paper. Lawyers are very good on paper, but when you get people under oath, you know, real facts come out. And just on your one point, Judge, that there is this belief that the 3020A, you know, kind of is objective. But there is a lot of cases in this circuit that say that if the plaintiff can show that the charges would not have been brought but for, you know, like the discrimination motivated the charges, the courts have allowed those cases to proceed to discovery and even to trial. So you could—you know, the fact that it gets into a neutral forum when an arbitrator is basically going to split the baby does not mean necessarily—now, if he was terminated, I'd have a harder argument, I believe. But, you know, when you get the split the baby kind of decision, would you think a neutral would kind of split the baby? So that's what happens, I think, in that context. So we would just ask that you give Mr. Gallaud a chance to either replete his facts or have an opportunity to explore discovery in this case and let the case proceed at least to make his arguments and let, you know, some fact-finding happen before. And I also think the—it's a little dangerous to let the city cherry-pick, you know, documents they want to attach in a motion to dismiss and then try to make arguments out of it and interpret a decision that, you know, has a lot of nuances to it. But even the lawyer for the city may not understand, having outlived that process. So— All right. Well, you've reserved three minutes for rebuttal. Thank you. So we'll now hear from Mr. Magnetti. Am I pronouncing that right, Mr. Magnetti? Yes, you are, Your Honor. Is that Magnetti? No, it's not. Maybe in Italy it is. May it please the Court, my name is Shane Magnetti. I represent the appellees. The complaint here did not plausibly allege that Plaintiff was discriminated or retaliated against. The inference to be drawn here is that Plaintiff was reassigned and disciplined not because of his race or religion but because he was being investigated for sexually harassing students who ultimately testified against him at a hearing where many of those allegations were substantiated. I direct this Court to page 41 of the appendix, which is toward the end of the independent hearing officer's decision. And it rules that the specifications constituted sexual harassment, verbal abuse, misconduct, conduct that could constitute a crime of endangering the welfare of a child. So there were indeed many allegations of sexual harassment substantiated here. And I think that really speaks to the underlying circumstances of this case and why they don't give rise to an inference of discrimination. Turning first to those discrimination claims, the only indicia of discrimination in this complaint are those two stray remarks attributable to Principal Johnson. And they're insufficient for a few reasons. First, because of the temporal gap, Johnson's remarks predate Plaintiff's reassignment by 10 months and the charges by two years, which undermines any inference of discrimination and is beyond any temporal lapse that this Court has found sufficient in the discrimination context. Second, the reassignment letter, which was incorporated by reference to the complaint and the Court found to be integral to the complaint, shows that Plaintiff was reassigned by Catherine Rohde, who is the director of the Office of Employee Relations, not by Principal Johnson. And the complaint alleges no facts that link Principal Johnson to Catherine Rohde or suggest that she had any input in this decision. And third, just the... Well, what about the assignment in June of 2019 where he was first assigned to that... I hate to say what they call it, but that room? Certainly, Your Honor. So, first of all, any conduct predicated on that spring of 2019 conduct, any claims predicated on that conduct are time-barred, and Plaintiff concedes that. Now, what Plaintiff attempts to do is still draw an inference of retaliation from that conduct and impute it onto all of these discrete acts that happened months later. Well, within a period of time, which wasn't time-barred? Correct, Your Honor. Within a period of time, that was... I understand the import of what was going on during the period, which isn't time-barred. Yes. Okay, all right. For example, the reassignment was 10 months after she made these remarks. The disciplinary charges in June were filed approximately two years after they made these remarks. And I would also just like to point out briefly, if you look at... But it's clear, I mean, because even he made reference to the March 17, 2020 letter from Rohde, which is the reassignment letter. Correct. It's clear that that's Rohde's call and not Johnson's call. Yes, Your Honor. Principal Johnson works at the school. Catherine Rohde is part of the Office of Employee Relations. In your response to the criticism from your opponent that this is outside the scope of the complaint, he made reference to it himself. He certainly did, Your Honor. Not only did he mention the reassignment letter in his complaint and use it to suggest that it was Principal Johnson who reassigned him, but this document was also integral to the complaint because he had actual notice of it. He relied on its contents in framing the facts. And for those reasons, under Cortec, the contents of that decision may be considered. Can I ask about the amendment? So as I saw it, there was basically just sort of a line in the brief opposing the motion to dismiss saying, and if we're going to lose, we'd like an opportunity to amend. But there's nothing more than that. Is that correct? That's correct, Your Honor. In the opposing papers, plaintiff just asked for an opportunity to amend. In his brief on appeal where he's represented now, he still suggests no new additional facts that he could plead that would overcome any of the deficiencies here. I believe the line is that plaintiff may be able to plead additional facts. And beyond the fact that he has not suggested none, which I think under this court's decision in Cuoco suggests that the court was correct to dismiss with prejudice here, I'm hard-pressed to think of any facts that would overcome the procedural bars in this case, the temporal lapses in this case. On that, can a notice of claim requirement be satisfied by an EEOC complaint? I don't think it can, Your Honor. I think if you look at the statute and you look at how New York courts have interpreted it, there's a case out of the Court of Appeals called Varsity Transit in which the court rejected an attempt to rely on a pleading to confer actual notice. And since that decision, courts have kind of been peeling back from allowing other documents to satisfy that requirement. But even if it could, and there are cases within this circuit that have found that an administrative complaint could satisfy that requirement, even in those instances, the administrative complaint still must have been served on the school or school district's governing body, which it was not here. It still has to be served within 90 days of the claim's accrual, which it was not here. The purpose of the notice under New York law is to inform a decision-making group of the potential of a claim so that they might be able to do something of it in advance. That's the whole purpose of the notice provisions in New York. That's correct. That's the point. And even beyond that, the complaint here does not even state what the administrative complaints said, what the conduct they relied on was. So there's really no way to establish that the DOE had actual notice of the precise claims that would be at issue in this case. So I think for those reasons, any claims predicated on state law against the DOE are time-barred. Even beyond that, they're time-barred for failure to comply with the one-year statute of limitations under Education Law 3013-2B. And I don't think Plaintiff has argued otherwise in his reply brief. Can I ask a question? I mean, typically at this early stage, if the federal claims are dismissed, then the state claims would be dismissed without prejudice because supplemental jurisdiction is something that wouldn't be exercised so early in the game. That's not what happened here. Is that a problem? I don't think that's a problem here, Your Honor, because even though the court has discretion to exercise supplemental jurisdiction. Well, it didn't really talk about that, though, right? No, it still. It just kind of lumped them all together. Well, I wouldn't say. Understandably, because they're analog statutes. I get it, but. Sure. I mean, the decision does at the end have a separate analysis, so to speak, of the state law claims. But no discussion of supplemental jurisdiction. Correct. And Plaintiff has not argued that there was any mistake here by the court failing to exercise or not exercise supplemental jurisdiction. So I don't think that argument is before the court. I'd also like to just briefly touch on the Mitchell case that this court decided at the end of last month. In that case, there were allegations in the complaint of a comparator that the plaintiff was replaced by someone outside of his protected characteristics, which we don't have here. If you look at the complaint, there's no allegation that plaintiff was replaced by someone of non-Indian heritage. And there's also no argument to that effect in the briefs before this court. Counsel made that factual assertion just now in argument. So for those reasons, we believe that the circumstances underlying this case don't give rise to an inference of discrimination. I think it's clear that the reason why plaintiff was reassigned and disciplined was because of this investigation into sexual harassment. It was conducted by an independent agency. Many of those allegations were indeed substantiated, and Plaintiff has not challenged them by an Article 75 or an Article 78 proceeding. So we ask that this court affirm. All right. Thank you, Mr. Magnetti. Thank you. Mr. Glass, you have three minutes for rebuttal. Yes. This is exactly why it's misleading when you read this decision, because what Mr. Magnetti was referring to was 841 of the record. This is a general provision about what he was generally charged with. The only findings that he was found guilty of, if you read this closely, is on page 42 on the last paragraph. And it says that he should reconsider handshakes and making comments about appearance. But is it the point, though, that it's Rody that makes the decision, not Johnson? Well, that's all— Wait a second. And your client is the one who offered the March 17, 2020 letter. What happens— In their complaint. And that's the only—that's the only act that's timely, isn't it? Practically, what happens— Just answer my question. Is it—is that the only act that's timely? No, I believe the charges themselves later are timely as well, when he actually gets charged. But those charges weren't—Rody was the one who made the decision about the— Are you saying there's an issue of fact about who made the decision? That's a fact-finding issue. We don't know that for sure. A fact-finding issue? You're the one who made—your client's the one—excuse me. Your client's the one who made the reference to the letter. Yes, he got a letter. It's not signed by Johnson. Yes, Johnson gave him a letter from Catherine Rody. That was the HR person that rubber-stamped Johnson's decision. Because Johnson's the principal of the school where he's working. Well, how do you think Rody got the determination? Because Johnson is the decision-maker that gives Rody the letter. So, Johnson—Rody's just the HR person. So, basically, Johnson is reporting allegations to Central. Rody is the lawyer, the HR lawyer for the DOE, and basically just signs the letter because the principal doesn't want him in the school. And then later, when there are new charges—and here's—we even discussed this about the retaliation that followed after, because he was being put back after those allegations, back in the school. Those were actually discounted. They were even returned to the school. And later, after he files the EEOC charge or the State Division charge, they have new allegations against him, and then they're charged with 3028. So that is the actual adverse action that's timely in this case, the new retaliation after he files an EEOC charge. Then he gets new allegations. But the concern about this record is Mr. Magnetti is taking a decision, and you guys are getting—I apologize, but you're misreading this 3028 decision as some kind of—that he's some kind of pervert. This is not what's happening here. And if you look at the facts, let the record be developed. And if you read Mitchell, it's right on point. Mitchell was actually—at least in Mitchell, the judge gave him a chance to amend. You're not— Why are you misreading Mitchell's? I think Mitchell—Mitchell was my case, and I believe that what the judge—at least in Mitchell, there was at least an opportunity to amend once. So can we at least amend once, and can we at least pursue the State claims without— But you haven't said what—I mean, what would you amend with? I mean, there's no suggestion as to what facts you've got in your back pocket— Well— —that are going to change this. So what are they? Well, there seems to be a lot of confusion about the relationship between Rhode Island and— But maybe if you told us in your brief— —and the principal— Maybe if you told us in your brief, we'd have something to talk about. Or made a motion in the district court to amend, explaining or attaching, in fact, a proposed amended complaint. I wasn't involved at that point, but— No, I'm talking about you, but you understand the point. Yeah, but I believe under Cuoco, it says the Second Circuit is strongly cautioned to not dismiss cases at the first blush. So if you're giving us an opportunity, I think we can improve this case to the point that it would get to the discovery and at least get it out of the facts. All right. Thank you. All right, well, we will reserve decision. Thank you both.